788 F.2d 1270
 Richard Clay BODINE, F. June Mabie, June Miller, Dale Dean
Howard, Norma Yeggy, Barbara Harris, Franklin R.
Berkey, William V. Wargo, and Howard L.
Hostetler, Plaintiffs-Appellants,
v.
ELKHART COUNTY ELECTION BOARD, Elkhart County Board of
Canvassers, Peter A. Sarantos, Clerk of Elkhart County
Election Board and Board of Canvassers and Individually,
Lloyd G. Stump and Wilmer McLaughlin, Members of the Elkhart
County Election Board and Board of Canvassers, and Worth N.
Yoder, Member of the Elkhart County Election Board and Board
of Canvassers, and Charles H. Grodnik, Member of Elkhart
County Election Board and Board of Canvassers, Defendants-Appellees.
 No. 85-1427.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1985.
Decided April 21, 1986.
 
 David T. Stutsman, Stutsman & Stevens, Elkhart, Ind., for plaintiffs-appellants.
 Craig Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, Ind., for defendants-appellees.
 Before BAUER, CUDAHY, and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants, Democratic candidates for state and federal offices in the November 2, 1982 general election in Elkhart County, Indiana, appeal from the district court's denial of their attempted challenge to the defendants' handling of the election. Appellants seek an injunction setting aside the election results and monetary damages based on violations of 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 1985 that arose from allegedly unsavory election practices that abridged appellants right to vote under the First and Fourteenth Amendments. Finding that the alleged violations of election law and procedure did not rise to the level of a constitutional violation, we affirm.
 
 I.
 
 2
 The November 2, 1982 general election in Elkhart County involved a computerized voting system in which computer punch card ballots were electronically tabulated. Theoretically this system would be more accurate and subject to less manipulation because it placed less reliance on election officials prone to human error. Unfortunately, according to the appellants, the election officials, despite their "minimal" role in this mechanical system, managed to undermine the accuracy of the vote counting apparatus and thereby impinge on the constitutional right to vote.
 
 
 3
 The defendant Clerk of the Election Board received the computer program control cards from the supplier without verifying their accuracy or preparing any tests to assure the proper functioning of the system. While no public test was ever performed, some testing, albeit inadequate, was conducted on the afternoon of the election. When actual tabulation was commenced errors started to appear. First, votes were reported in one district that belonged in another and vice versa. The control cards were changed to correct this but no tests were run. Later, a similar problem developed in tabulations for the race for state representative. Again, changes in the cards were made and no tests were run. Appellants describe a string of errors followed by patchwork repairs to the system without ever conducting an overall evaluation. Appellants contend that in the absence of error-free computer testing, no verifiable count of the voting in the election was reported and thus, the election was erroneously certified. The conduct of this election was, according to the appellants, in violation of applicable Indiana law governing the use of electronic vote-counting systems.
 
 
 4
 Appellants proceeded initially in Indiana State Court under that state's elections laws. Three law suits were brought and all were dismissed for failure to comply with the statute of limitations. At the time the district court ruled, an Indiana Court of Appeals had reversed the lower court with respect to the election certification issue, creating some overlap between the state and federal actions.
 
 
 5
 The district court in granting summary judgment for the defendants held that: (1) election irregularities had to reach a certain level before there could be an impingement on constitutional rights and that the plaintiffs had alleged only mechanical and human error that lacked fraudulent intent; (2) plaintiffs failed to present a valid section 1983 claim under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); and (3) this would be an appropriate case for the invocation of the doctrine of abstention.
 
 II.
 
 6
 The law governing the invocation of section 1983 for alleged "malfunctions" of the electoral process is well settled.[1] The Constitution is not an election fraud statute: protection is extended to the right of all qualified citizens to vote in state and federal elections, Reynolds v. Sims, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377-78, 12 L.Ed.2d 506 (1964) and to the right to have votes counted without dilution as compared to the votes of others. Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50, 52, 90 S.Ct. 791, 793, 25 L.Ed.2d 45 (1970). "It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983." Hennings v. Grafton, 523 F.2d 861, 864 (7th Cir.1975). In what has become a widely accepted statement of the standard, Judge Tone in Hennings held that section 1983 is implicated only when there is "willful conduct which undermines the organic processes by which candidates are elected." 523 F.2d at 864 (emphasis added). Accord, Hendon v. North Carolina State Board of Elections, 710 F.2d 177, 182 (4th Cir.1983) (election process must reach the point of "patent and fundamental unfairness"); Duncan v. Poythress, 657 F.2d 691, 701 (5th Cir.Unit B., 1981) (citing Hennings); Partido Nuevo Progresista v. Barreto Perez, 639 F.2d 825, 827 (1st Cir.1980); Gamza v. Aguirre, 619 F.2d 449, 452 (5th Cir.1980) (quoting Hennings ); Rudisill v. Flynn, 619 F.2d 692, 695 (7th Cir.1980) (incidental burdens not actionable under section 1983); Griffin v. Burns, 570 F.2d 1065, 1076 (1st Cir.1978) (section 1983 does not cover garden variety election irregularities). See generally Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official....").
 
 
 7
 Implicit in the restriction of section 1983 to debasement of the electoral process are two considerations, one of great import, the other of practical concern. First, federalism concerns caution against excessive entanglement of federal courts in state election matters.
 
 
 8
 The very nature of the federal union contemplates separate functions for the states. If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss.
 
 
 9
 Gamza, 619 F.2d at 453. See also Pettengill v. Putnam County R-1 School District, 472 F.2d 121 (8th Cir.1973). Second, as was stressed in Hennings, elections are generally conducted by volunteers, rather than trained professionals. While this may be a positive aspect of the electoral system it inevitably leads to errors of widely differing degrees of severity. Hennings, 523 F.2d at 865.
 
 
 10
 Appellants, in the present case, have alleged nothing more than garden variety election irregularities that could have been adequately dealt with through the procedures set forth in Indiana law.[2] This case is virtually indistinguishable from the facts of Hennings, where the malfunctioning of electronic voting devices which were alleged to not comply with state requirements did not establish a section 1983 claim in the absence of fraud or other willful conduct.
 
 
 11
 Appellants seek to distinguish Hennings on the grounds that fraud and willful conduct were alleged and that, unlike Hennings where a full trial was held, summary judgment precluded full discovery and the chance to adduce evidence of fraud at trial. The difficulty here is that appellants confuse fraud with what is at most willful neglect. Appellants' argument is that defendants' undermined the election process by fraudulently and willfully refusing to test the system, count the votes, and certify the results. Significantly missing from the argument is any allegation that the computer control cards were somehow manipulated by the defendants to undermine the election. Under the appellants' version of the facts the defendants placed the cards in the computer with no knowledge of whether the program would produce error and if so whether that error would be helpful to Republicans or helpful to Democrats. Thus, the election officials' actions sound more like incompetence than election fraud.
 
 
 12
 Appellants claim that because the district judge granted summary judgment prior to ruling on their discovery motions they were deprived of the opportunity to obtain the control cards and establish the extent of the fraud. Clearly the cards would be highly relevant evidence of manipulation of vote totals. But that is not appellants' case; the election irregularities they allege are limited to the failure to test, count, and certify in accord with Indiana law. Fraudulent manipulation of the vote totals was not alleged in the complaint. Thus, even if the cards did evidence fraud, that evidence would not make the failure to run the test required under state law any more or less actionable under federal law. It would only establish that a true section 1983 action, which plaintiff failed to allege, existed. Under these circumstances the district judge did not abuse his discretion in entering summary judgment before ruling on the discovery motion. See Cohen v. Illinois Institute of Technology, 524 F.2d 818, 827 (7th Cir.1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) (Plaintiff "is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made.") (Failure of complaint to allege state support or approval in section 1983 action). See also Musso v. Suriano, 586 F.2d 59, 63-64 (7th Cir.1978).
 
 III.
 
 13
 This court finds that there were no issues of material fact which precluded summary judgment on the grounds that appellant has not presented a cognizable claim under 42 U.S.C. Sec. 1983. The judgment of the district court is therefore AFFIRMED.
 
 
 
 [1]
 Appellants also attempt to state a cause of action under 42 U.S.C. Sec. 1985. Since mere election irregularities are not actionable under that section, Pettangill v. Putnam County R-1 School District, 472 F.2d 121 (8th Cir.1973), our disposition of the section 1983 claim also precludes liability under Section 1985
 
 
 [2]
 Since this case can be disposed of on section 1983 grounds there is no reason to reach the alternative grounds relied on by the district court. We express no opinion on the validity of the district court's rulings with respect to any of the grounds not a part of the opinion of this court